THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* LAWRENCE SCARLIONE, Defendant.

Court of General Sessions of the County of New York, June 25, 1937.

*William Copeland Dodge, District Attorney [Martin Binder, Deputy Assistant District Attorney* of counsel], for the plaintiff.

*Caesar B. F. Barra, Jancourt & Goldman [Jacob Jancourt* of counsel], and *Nicholas P. Iannuzzi,* for the defendant.

FRESCHI, J.   This defendant moves to set aside the verdict of the jury convicting him of the crime of criminally receiving, etc., stolen goods and asks for a new trial, in which motion he is joined by the district attorney himself who states that he believes that in the interest of justice such motion should be granted.

The indictment accuses the defendant of robbery in the first degree, grand larceny in the first degree, assault in the first degree and criminally receiving stolen property.   At the trial the robbery and receiving counts were the only two counts submitted to the jury, and although the witness in chief of the People, Pellegrino Risolo, identified the defendant as one of the robbers, the jury's verdict under the fourth count must be treated as an acquittal of the defendant so far as the robbery charge is concerned.   The larceny and assault counts were necessarily included in and constituted a part of the robbery charge.   These were not submitted to the jury.   The defendant could not have been convicted under the other counts when the jury found him guilty of criminally receiving stolen property.   Hence, it follows that this conviction must depend for its support entirely on the evidence adduced regarding the possession of the stolen merchandise by the defendant.   There was no serious dispute at the trial that the merchandise in this case was the subject of a larceny, arising out of an alleged robbery. It had been taken unlawfully from a truck driven by Pellegrino Risolo at Twenty-fifth street between Tenth and Eleventh avenues on the 16th day of October, 1936.   The jury evidently did not believe or doubted this witness on his identification of the defendant as one of the persons who stole the property.   That, of necessity, limited the inquiry and determination of the jury to the question in issue as to what knowledge the defendant had that the goods were stolen property.

There is no doubt that the defendant never actually got possession of the merchandise. According to the proof in the case some one called him to pick up a load of waste material, and he, thereupon sent his truck and employees to 406–426 West Thirty-first street to get it. His men have testified that on his instructions they went to that address and there found a person who gave them the bags containing the property in question. There can be no doubt, in the light of the testimony, that those bags were not concealed in any way on the truck which was then laden with other bags of waste paper. The police had been informed that all this would occur and they had the truck under observation and followed it from the point where the merchandise was picked up to the place of business of this defendant where it was about to be unloaded, when the arrest of the defendant followed.

Among the People's witnesses was Patrolman Hugo Harris, who had received word from an informer, a relative of his, according to a statement made by Harris to Police Inspector Michael McDermott, that a robbery was to be perpetrated, and later was informed where the goods had been taken and from which place they would be removed. And, according to the testimony of his superior officer, Lieutenant John Cordes, who was among the officers present at the time, Harris accosted Cordes and his companions and suggested that he did not think that an arrest in the case ought to be made, because " these fellows are innocent." Cordes resented Harris' suggestion that no seizure of the goods be made or an arrest effected. Cordes took charge and after following the property he ordered the arrest of the defendant. The only evidence that might constitute a basis for inferring any guilty knowledge on the part of the defendant is what his driver Basile testified was told him by the defendant: " ' In case, any cop, they ask you what you got there — what you got in the load of waste paper material — you say you got the stuff from somebody; this man give you a load of waste paper material. * * * say you got $2 from the man.' " Besides, we have the testimony of a statement made by the defendant to the police at the station house that he had not sent the man for the load of waste material.

The testimony in the case clearly shows that a reward had been offered by a surety company for the recovery of the stolen merchandise. Harris admits that he was interested in this for the informer, and, according to the testimony of Police Lieutenant Cordes, with whom Harris spoke about it, Harris, in fact, had gone to discuss the matter with Noel Scaffa of the insurance company in order to secure a split of the reward, so that the informer could share in it to the extent of one-half of the amount, which was

$2,000. Aside from the ethical question involved in that situation, the weight of Harris' testimony has been, I think, very much shaken and impaired by this and other circumstances in the record, even though he does not claim that he ever spoke to the defendant about this case or any subject connected with it.

The jury would have been justified in disregarding all of this witness' testimony but taking it for granted that they considered it in its most favorable light, Harris' testimony adds nothing vitally important to the case outside of what is admitted by the defense. Hence, what remains to prove *scienter?*

The defendant only got the goods constructively through his employees on his truck while he was not present. He never had an actual possession. The merchandise arrived at his place and was about to be unloaded when the police, headed by Cordes, interfered and prevented the removal of the property. His denial plus the driver's testimony are the only items in reference to the defendant's alleged guilty knowledge. Can it be said that upon this testimony, the finding of guilt by the jury was supported by sufficient evidence beyond a reasonable doubt? It is not alleged that this defendant paid any price for the goods, and hence it cannot be argued that the payment constitutes some proof of guilty knowledge. There is no such element in the case. Clearly, the defendant's business was that of a dealer in waste paper so that the act of sending his men and truck to pick up the merchandise, as well as the possession of it on that truck, in and of itself does not make out the elements of guilty knowledge. The fact that he sent his men out for it and their possession of the goods may be a perfectly innocent circumstance. No witness has testified that the defendant had been advised, in advance of his giving the order to his men, that the goods had been previously stolen or were the subject-matter of a robbery.

Testimony was taken by the court on the making of this motion. Police Lieutenant Cordes was one of the witnesses examined and he stated, among other things, that " about the hour of 11:30 A. M. on the afternoon of the arrest, Patrolman Harris came to the automobile in which I was seated with McElligott and said that there would be a truck come up here sometime within the next hour; it is a green paper truck, and it has a lot of bags of refuse on it, and the furs are going to be put underneath the refuse bags, and they will be taken to a building in 30th Street near 10th Avenue. I said to him ' what does the fellow know about it? ' He said, ' I don't think he knows anything, and I don't think we should bother him because it will be too close to my informant.' I observed a truck pull up and Patrolman Harris came over to me and said that truck is there

now. I then observed Patrolman Harris go over and have a conversation with a man on the block about one hundred and fifty feet away from the entrance to the building where the furs were taken from. After the conversation I observed a man who was Harris' informant enter the building from where the furs were taken from. Q. How did you know that that was the man you describe as his informant? A. Because prior to my leaving the place where I had originally stood, Harris came over to where I was seated and said to me. * * * ' I don't think you had better stay in the block, my stool don't want you to see him ' * * * [his informant]. I seen him enter the building. I didn't see him coming out. I seen him enter the building prior to the furs being removed. I followed the truck. * * * We were seated possibly three minutes when Harris came over to the car where I was seated with McElligott, and he said, ' I do not think we better arrest anybody in this case; we got the furs; I don't think they know anything about it.' I said: ' Don't be telling me what to do because I will determine that when I get to it.' As I was speaking to Patrolman Harris I observed this defendant, Scarlione, come out of the premises where the furs had been moved into by the automobile truck. * * * When we entered the place of this defendant, the truck was intact as it had driven in there nothing had been touched one way or the other. Q. Where was Officer Harris at that time? A. He entered the place with me and Scarlione. Q. Now, did Officer Harris give you any reasons other than you have told His Honor why he wanted no arrest in the case? A. He said that these defendants didn't know anything about it; he thought they were innocent. Q. What about the question of the reward? A. Well, of course, insofar as the reward was concerned, Harris told me that he had promised his informant 50 percent of the amount of the reward; and the others was to be divided amongst the officers who participated in the arrest." (See, also, testimony of Detective Richard F. McElligott.) At the hearing on this motion, Lawrence Scarlione, the defendant, was sworn and testified that he is in the paper stock business and removes paper, rubbish and rags in different parts of the city and that most of the time he gets telephone calls to go and pick it up from customers whose offices and lofts are visited from time to time and other places; that prior to his arrest he received a telephone call, but he cannot say from whom, to pick up paper right away at an address on Thirty-first street, and made an appointment for that afternoon; that when the truck returned he did not know it contained any bags of furs and that his arrest was made as he was going out to buy a package of cigarettes next door.

A significant circumstance in the case appears in the testimony of Harris who said substantially that the informer had a month before the theft discussed a reward with him and inquired if he (the informer) turned the case over " to me " (Harris) what was in it for the informer. That was about September sixteenth. Inspector McDermott, Harris claims, was apprised about the matter.

There is some testimony also, that Harris stated that he first knew of a reward when the representative of the insurance company came to see him at the district attorney's office after the commission of the crime. This discrepancy requires explanation.

Upon the hearing of this motion the defendant was called to the stand and examined and cross-examined with respect to the statements attributed to him by some of the People's witnesses. He testified that he did send the trucks to the West Thirty-first street address to pick up some " rags " pursuant to a telephone call that came to his place of business on that day; and he denies any knowledge that his men were going to get some furs. Furthermore, he denies that he told Basile, the driver, that if anybody said anything to him about what the driver had on the truck, or what he was going to get, to say somebody other than this defendant told him to pick up the property. The defendant said the following in his testimony: " I said I don't want to be in it; you got some stolen stuff on it; I do not want to be mixed up in the case because I was arrested before. They are liable to get the wrong impression; I said you tell him any story, don't mention me, tell him you got it yourself." His explanation about the instructions he gave his driver at the time of the arrest seems plausible, and it all is susceptible of an innocent construction.

Motions like this are addressed, as a general rule, to the conscience and sound judicial discretion of the trial judge. When the court is not satisfied with the verdict, and the justice of the case makes it clear there should be a new trial, the judge may exercise his discretion accordingly. (See *Manuel* v. *People*, 48 Barb. 548, at p. 550; Code Crim. Proc. § 465.)

On this whole record, I agree with the district attorney that justice requires a new trial and, therefore, I grant the motion to set aside the verdict and order a new trial, at which there should be a re-examination of the issues of this case and of the additional testimony taken before me at the hearing of this motion.

It has been represented to the court by the district attorney that if this motion be granted, he will place the defendant on trial under the fourth count of this indictment; and it has also been represented to the court by the counsel for the defendant that the defendant, in the event of a new trial, will testify in his own behalf thereat and subject himself to a full and complete cross-examination by the

prosecuting authorities. The district attorney, who has expressed grave doubt as to the correctness of the verdict here, wishes to have all of the evidence, including that taken on this motion, submitted to a trial jury which would then pass upon all the issues of the new trial.

Direction is hereby made that this case shall be placed on the trial calendar for June 30, 1937, to fix a day for trial and to fix the amount of bail herein.

Let counsel for the defendant submit an order accordingly to be settled upon notice to the district attorney.